UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD KVET, ) | Case No.: 1:12 CV 2178 |
| ) | |
| Plaintiff ) | |
| ) | JUDGE SOLOMON OLIVER, JR. |
| v. ) | |
| ) | |
| PHIL R. STAMMITTI, *et al.*, ) | |
| ) | MEMORANDUM OF OPINION |
| Defendants ) | AND ORDER |

*Pro se* Plaintiff Richard Kvet ("Kvet") filed this action against Lorain County Sheriff Phil R. Stammitti, the Lorain County Sheriff's Department, and Fifth-Third Bank. In the Complaint, Plaintiff asserts his Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth Amendment rights were violated in connection with a state court foreclosure action. He does not specify the relief he seeks from this Court.

Kvet also filed an Application to Proceed *In Forma Pauperis*. (Doc. No. 2). That Application is granted.

Two months after Kvet filed the Complaint in this action, Sue Ann M. Hudson-Kvet filed a document in this action which she labels as a "Criminal Complaint Notice and Demand for Cease and Desist Order" (ECF No. 4). Although she clearly shares the last name of the Plaintiff, she does not indicate her relationship to him, or her interest, if any, in the property in the foreclosure action. Furthermore, while she refers to herself in the document as "'Plaintiff', 'Principal,' 'me' and any derivate indicative of Plaintiff and/or her possessions," she has not requested to intervene in this

action, and does not include Richard Kvet as a Plaintiff in the document she filed. (ECF No. 4 at 1.) She lists Fifth-Third Bank, and the Lorain County Sheriff Department as Defendants but deletes Phil Stammitti and adds Ricardo D. Rucker as a Defendant. Because Hudson-Kvet is not a party to this action and has not requested to intervene as a party in this action, she cannot file an amended pleading. Consequently, the Court will not consider any claims she may be asserting in this document.

**Background**

Plaintiff's Complaint is very brief and is composed largely of legal rhetoric. He states he is bringing a cause of action against local government officials in Lorain County who were involved in "an unlawful detainer involving an improper foreclosure proceeding and seizure" of the property located at 12568 Melody Lane in Grafton, Ohio. (ECF No. 1 at 1.) He indicates he received notice of a "withdrawal from a previous judge order for seizure of property from Case No. 09-CVI 60458; and is not in possession of any other Judges' signature order for any other civil order of alleged 'Court Order' for property seizure by named Sheriff via certified copy or the like with no outstanding 'court orders' via Case No. 10-CV-167243." (ECF No. 1 at 1). He claims the officials unlawfully seized his property in violation of the Fourth Amendment, and denied him Due Process. He contends they trespassed on his property "with a direct attempt to defraud and obfuscate Due Process and the merits of lawful notifications in receipt of named parties." (ECF No. 1 at 2.) He asserts that the foreclosure action and sheriff sale "have been a condition of fraud upon the prior courts on the record." (ECF No. 1 at 2.) He indicates he was deprived of his rights in violation of 5 U.S.C. § 706.

Lorain County Court of Common Pleas records reveal that two foreclosure actions were

filed by Fifth Third Bank against Richard Kvet under Case Nos. 09CV160458 and 10CV167243.[1] Case No. 09CV160458 was filed by Fifth-Third Bank against Kvet on January 23, 2009. The bank voluntarily dismissed the action on March 31, 2009.

Fifth-Third Bank filed the second foreclosure action against Kvet on April 21, 2010. Judgment of foreclosure was granted to Fifth-Third Bank on August 19, 2011, and an order of sale was issued to the Lorain County Sheriff on September 21, 2011. The property was sold at auction on November 10, 2011 to Fifth-Third Bank. The sale was confirmed on December 16, 2011.

The Court issued a writ of possession on May 11, 2012, but erroneously recorded it under the 2009 case number instead of the 2010 case number. On June 11, 2012, Kvet filed a Notice of Adverse Claim and Objection to Ruling in the 2009 case in response the erroneous entry. On June 13, 2012, the court realized the error and issued an order withdrawing the writ of possession in the 2009 case. A writ of possession was issued correctly under the 2010 case number on July 5, 2012. Kvet responded by filing an Affidavit of Interest, a "Notice of Adverse Claim," and a document titled "Civil Rights Violation, Unlawful Detainer, Unlawful Seizure w/ Jury Demand." The Writ of Possession was executed on August 24, 2012, by the Lorain County Sheriff, and Kvet was evicted from the property. Possession of the property was delivered to Fifth-Third Bank.

Kvet now files this action in federal court objecting to the foreclosure proceedings. He claims it violated his Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth Amendment rights.

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365

---

[1] Lorain County Court of Common Pleas dockets can be found at http://cp.onlinedockets.com/loraincp/case_dockets/Docket.aspx?

(1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as

---

[2] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), further explains the "plausibility" requirement, stating that " a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**Analysis**

Kvet does not clearly specify the relief he seeks in this action, and it is therefore difficult to determine what he hopes to gain from filing the case. One potential interpretation of the Complaint is that he is asking this Court to overturn the state court judgment of foreclosure, the state court order directing the property be sold at sheriff's sale, or the state court's order granting the writ of possession. Another possible interpretation is that Kvet is seeking to litigate these matters anew in federal court hoping to obtain a different, and more favorable, result. Finally, it is possible Kvet is seeking to assert claims which arose from the actions of the parties during the course of the state court litigation, without challenging the validity of the underlying state court judgments. This Court lacks subject matter jurisdiction to entertain the first two possible intended results. To the extent he intended only to assert claims against the parties based on their conduct in the state court proceedings, the third possible intended result, he fails to state a claim upon which relief can be granted.

**A. Rooker-Feldman**

To the extent Kvet is seeking to overturn the judgments and orders of the state court, this Court cannot grant his requested relief. United States District Courts do not have jurisdiction to overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. *Berry v. Schmitt* 688 F.3d 290, 298-99 (6th Cir. 2012).

The Rooker-Feldman doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a).[3] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to do so by filing a writ of

---

[3]     28 U.S.C. § 1257(a) provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

certiorari with the United States Supreme Court.  The Rooker-Feldman doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic v. Cuyahoga County Dep't of Children and Family Services*, 606 F.3d 301, 308-311 (6th Cir. 2010); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

Rooker-Feldman is a doctrine with narrow application.  It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court."  *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99.  It also does not address potential conflicts between federal and state court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion.  *Berry*, 688 F.3d 299.  Instead, the Rooker-Feldman doctrine applies only where a party losing his or her case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself, and seeks review and rejection of that judgment.  *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir.2009). To determine whether Rooker-Feldman bars a claim, the Court must look to the "source of the injury the plaintiff alleges in the federal complaint."  *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir.2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310.  If the source of the Plaintiff's injury is the state-court judgment itself, then the Rooker-Feldman doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the Plaintiff asserts an independent claim." *Id.*; *see Lawrence*, 531 F.3d at 368-69.  In conducting this inquiry, the court should also consider the Plaintiff's requested relief.  *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

In the present action, it is difficult to determine what Kvet's injury is apart from the state

7

court judgment because he does not provide sufficient allegations in his Complaint. He refers to the foreclosure proceeding as improper, claims he did not receive orders which were signed by the judge granting judgment to Fifth-Third Bank and ordering the sale of the property, and asserts that the seizure of his home through the writ of possession was unlawful. He does not recognize the validity of the state court judgments and asserts he has not received a fair trial and was denied due process. Moreover, he includes a reference to 5 U.S.C. § 706 which defines the scope of federal court review of federal administrative agency decisions. While a state court is not a federal administrative agency, it is possible that Kvet cited this statute believing it entitles him to review of the state court judgments. If this is Kvet's purpose in citing the statute, his claimed injury would be the state court judgments themselves, and the Rooker-Feldman doctrine would apply. This court lacks subject matter jurisdiction to conduct any review of the state court judgments or to grant Kvet relief from those judgments.

### B. Res Judicata

To the extent Kvet filed this action in Federal Court hoping to simply re-litigate the foreclosure action and obtain a different result, the Court cannot grant that relief either. A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; *Dubuc v. Green Oak Township*, 312 F.3d 736, 744 (6th Cir. 2002). When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether the prior judgment should be given preclusive effect in a federal action. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984). As an Ohio state court already issued on order granting the foreclosure, confirming the sheriff's sale, and granting a writ of

possession, this Court must look to Ohio law regarding *res judicata* in considering whether any of the claims raised by Kvet in his federal Complaint are barred by these state court judgments.

Under Ohio law, the doctrine of *res judicata* dictates that "a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." *Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 69 Ohio St.2d 241, 243 (1982). Application of the doctrine of *res judicata* does not depend on whether the original claim explored all possible theories of relief. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000). Rather, "a valid, final judgment upon the merits of the case bars any subsequent action 'based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995).

In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim preclusion and issue preclusion. *State ex rel. Davis v. Pub. Emp. Ret. Bd.*, 120 Ohio St.3d 386, 392, 899 N.E.2d 975, 981 (2008). Under the Ohio doctrine of claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995). The doctrine of claim preclusion encompasses "all claims which were or might have been litigated in a first lawsuit." *Id.* By contrast, issue preclusion, or collateral estoppel, "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Med. Ctr. v. Hoffman-LaRoche, Inc.*, 80 Ohio St.3d 212, 217 (1997). Issue preclusion applies when a fact or issue "(1) was actually and

directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994).

In the instant action, Kvet and Fifth-Third Bank were parties to the state court proceedings. Sheriff Stammatti and the Lorain County Sheriff's office were not parties to the action, but they were ordered by the state court to carry out the sale of the property and execute the writ of possession.

Kvet's Fourth Amendment and due process claims are barred by the doctrine of issue preclusion. Kvet indicates in his Complaint that he does not recognize the validity of the state court judgments pertaining to the foreclosure, the sheriff's sale and the writ of possession. Because he does not recognize the validity of those judgments, including the judgments terminating his interest in the property, he claims that the execution of those judgments by the sheriff's office constituted an unlawful seizure under the Fourth Amendment. A seizure of property for Fourth Amendment purposes occurs when "there is some meaningful interference with an individual's possessory interests in [certain] property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). To address Kvet's Fourth Amendment claim, this Court would have to determine that Kvet had a possessory interest in the property in question. The state courts, however, have already decided the issue of Kvet's possessory interest in the property when it ordered the sale of the property, confirmed the sale, and ordered Kvet to be evicted from the property after the sale. The doctrine of issue preclusion prevents Kvet from relitigating this issue.

Kvet also asserts he was denied due process. The factual basis for his due process claim is less obvious. It appears Kvet is claiming that he should have been given a jury trial, and feels that

the legal proceedings were unfair in some way. He also appears to be claiming that the eviction denied him due process because he believes the court orders authorizing the eviction were invalid. If Kvet is not including these allegations in an attempt to get this Court to set aside the state court judgment, he may be making these assertions to convince this court to entertain anew the issue of his interest in the property. The state court has already litigated this issue. This Court must give full faith and credit to those state court judgments.

### C. Failure to State a Claim

Finally, to the extent that Kvet is seeking to assert claims against the Defendants for their conduct and actions in conjunction with the state court proceedings, or outside of the state court proceedings, he fails to state a claim upon which relief may be granted. He states, without explanation, that the Defendants violated his Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Fourteenth Amendment rights. He indicates his Fourth Amendment rights pertain to the seizure of his property. He contends he was denied due process, which the Court construes as his claims for violation of the Fifth and Fourteenth Amendments. He quotes a portion of the Seventh Amendment in his Complaint and states a jury trial was not conducted. Kvet provides no explanation for his claims under the Sixth, Eighth, and Ninth Amendments.

#### 1. Fourth Amendment

Even if Kvet's Fourth Amendment claim were not barred by the doctrine of *res judicata*, he fails to state a claim upon which relief may be granted. The Fourth Amendment, made applicable to the States by the Fourteenth, *Ker v. California*, 374 U.S. 23, 30 (1963), protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir.2002)

11

(citing *United States v. Place*, 462 U.S. 696, 700-701, 709-710 (1983))  A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Jacobsen*, 466 U.S. at 113.  The Supreme Court has emphasized that "at the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home." *Silverman v. United States*, 365 U.S. 505, 511 (1961). *See also Oliver v. United States*, 466 U.S. 170, 178-179 (1984); *Wyman v. James*, 400 U.S. 309, 316 (1971); *Payton v. New York*, 445 U.S. 573, 601 (1980). The Fourth Amendment therefore extends to protect homeowners and lessees from unlawful eviction by law enforcement personnel.  *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 62-72 (1992)(finding a Fourth Amendment violation where police officer assisted a landlord in evicting a tenant without a court order).

The Fourth Amendment, however, does not prohibit all seizures of property.  Only unreasonable seizures violate the Constitution.  *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 539 (1967); *Pleasant v. Zamieski* 895 F.2d 272, 277 (6th Cir. 1990).  As is true in the context of criminal cases, the reasonableness determination requires a "careful balancing of governmental and private interests."  *New Jersey v. T.L.O.*, 469 U.S. 325, 334-335 (1985).  The seizure of property is *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant or judicial order.  *See Farm Labor*, 308 F.3d at 543 (citing Place, 462 U.S. at 701).  Conversely, where the officers were acting pursuant to a court order, the seizure of property is presumed to be reasonable.  *Soldal*, 506 U.S. at 71.

In this case, Kvet was deprived of his property as the result of a judgment of foreclosure, a court order of sale, and a writ of possession issued by a court.  The presumption is then that the seizure of the property was reasonable.  Kvet does not allege any facts to suggest that the officers

12

acted unreasonably in the course of executing those court orders. He therefore fails to state a claim for relief under the Fourth Amendment.

### D. Due Process

Kvet also asserts violations of the Fifth and Fourteenth Amendments. Although he does not explain these claims, he indicates he believes he did not receive a fair trial and questions the validity of the state court orders and judgments. The Fifth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Similarly, the Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clauses bar "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Neither of these Due Process Clauses prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness

13

in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id*. Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983). Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing. *See Id.* The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent the arbitrary use of government power. *Howard*, 82 F.3d at 1349. Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Howard*, 82 F.3d at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. *Id*. It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

### 1. Procedural Due Process

To prevail on a procedural due process claim, Kvet must plead and prove either that the

Defendants deprived him of his liberty or property as a result of an established state procedure that itself violates due process rights; or that the Defendants deprived him of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). Kvet does not raise a specific challenge to an established state procedure, statute or local ordinance. Instead, he claims that the foreclosure judgment, the order of sale, and the writ of possession were not valid because he did not receive a copy signed by the judge and suggest in a general way that the proceedings were unfair. He therefore appears to contend he was deprived of his property due to unauthorized acts of the judge, who is not a party to this case, and the Sheriff's Department who conducted the sale and executed the writ of possession.

To state a procedural due process claim based upon alleged unauthorized acts of the Defendants, Kvet must also plead and prove that state remedies for redressing the wrong are inadequate. *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064. If the orders in question are invalid or were issued in error, Kvet may appeal the judgment to the Ohio Court of Appeals and the Ohio Supreme Court. He has not indicated that he has pursued this remedy nor does he give any indication that the state remedy available to him would be inadequate.

### 2. Substantive Due Process

Kvet also fails to state a claim against the Defendants for denial of substantive due process. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are

unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. *Id*. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.*

While the foreclosure process is undoubtedly difficult for the party who loses his home, Kvet has not established a denial of substantive due process. Fifth-Third Bank filed a civil action, and obtained a judgment which was favorable to them. The Sheriff and his deputies followed court orders to execute that judgment. Nothing in the Complaint suggests that the Defendants acted in a way that was disproportionate to the need presented or which abused their authority to such an extent that it exceeded the boundaries of normal tort law to rise to the level of a constitutional violation.

### E. Seventh Amendment

Plaintiff also includes a claim for violation of his Seventh Amendment rights. The Seventh Amendment provides: "In Suits at common law ... the right of trial by jury shall be preserved." U.S. CONST. amend. VII. Kvet quotes this Amendment but does not provide any explanation for including it in the Complaint except to say he was not given a jury trial. A court is not required to impanel a jury, however, unless a trial will take place. *Leary v. Daeschner,* 349 F.3d 888, 909-10 (6th Cir. 2003)**.** In the instant case, no trial took place because the state court disposed of all of all claims when it granted Fifth-Third Bank's Motion for Summary Judgment. If there are no issues for a jury to decide, there is no need to impanel one. Granting summary judgment does not violate the Seventh Amendment. *See Willecke v. Toth*, No. 09–1600, 2012 WL 1034639, at *1 (6th Cir.

Mar. 28, 2012). *See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) (citing *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319-21(1902) for support of the proposition that summary judgment does not violate the Seventh Amendment)**.**

Moreover, none of the Defendants in this case is charged with impaneling juries. Fifth-Third Bank was a litigant in the state court action. The Lorain County Sheriff and the Lorain County Sheriff's Department were charged with executing the judgment. A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). If Kvet had been improperly denied a trial by jury, he could not assert that claim against the Defendants in this case.

### F.  Eighth Amendment

Although Kvet fails to include any factual explanation for the basis of his claim under the Eighth Amendment, it is without merit. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes, by dictating that punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). By its nature, the Eighth Amendment is only applicable to incarcerated individuals. *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir.1992). Kvet is not a prisoner incarcerated in a state or federal correctional institution. The Eighth Amendment is therefore inapplicable to the allegations in this Complaint.

### G.  All Other Claims

Finally, Kvet fails to state a claim for relief under the Sixth and Ninth Amendments. The

Sixth Amendment applies only to criminal prosecutions. U.S. CONST. amend. VI. The Ninth Amendment provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." He provides no explanation of why or how this Amendment is applicable to provide him with relief. No explanation is apparent on the face of the Complaint. Although Kvet is not required at the pleading stage to provide the Court with detailed factual allegations, he must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action" *Twombly*, 550 U.S. at 555. His claims under the Sixth, and Ninth Amendments are stated as legal conclusions. They have no apparent connection to the allegations in the Complaint and do not meet the pleading standards of Federal Civil Procedure Rule 8. He fails to state a claim upon which relief may be granted under these Constitutional Amendments.

**Conclusion**

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* is granted and this action is dismissed pursuant to 28 U.S.C. §1915(e). Defendants' Motion to Dismiss (ECF No. 7) is denied as moot. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.